MARC X. CARLOS
California State Bar No. 132987
**MARC CARLOS LAW, A.P.C**
424 F Street, Suite 205
San Diego, California 92101
Telephone:  (619) 702-3226
Facsimile:  (619) 702-5415
marc@marccarloslaw.com

CHARLES L. REES
California State Bar No. 200682
**LAW OFFICE OF CHARLES L. REES**
424 F Street, Suite 205
San Diego, California  92101
Telephone:  (619) 239-9300
Facsimile:   (619) 702-5415
charlesreeslaw@gmail.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JUAN GOMEZ, INDIVIDUALLY AND IN HIS CAPACITY AS SUCCESSOR-IN-INTEREST  TO DECEDENT ALBERTO GOMEZ QUINTERO

          PLAINTIFF,

v.

COUNTY OF IMPERIAL; RAYMOND LOERA, individually and in his official capacity as Sheriff for the COUNTY OF IMPERIAL; FRED MIRAMONTES, individually and in his official capacity as Undersheriff for the COUNTY OF IMPERIAL; SCOTT SHEPPEARD, individually and in his official capacity as Chief Deputy Sheriff for the COUNTY OF IMPERIAL; PEDRO MILLAN-GUZMAN, individually and in his official capacity as a deputy sheriff for the COUNTY OF IMPERIAL; DUSTIN SNYDER, individually and in his official capacity as a deputy sheriff for the COUNTY OF IMPERIAL; ALEJANDRO TAMAYO,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No:      **'23CV2367 BEN MSB**

**COMPLAINT FOR DAMAGES FOR:**

COMPLAINT

individually and in his official capacity as a deputy sheriff for the COUNTY OF IMPERIAL; DOES 1-14, individually and their official capacities as sheriff's deputies for the COUNTY OF IMPERIAL; DOES 15-29, individually and in their official capacities as supervising sheriff's deputies for the COUNTY OF IMPERIAL; LETICIA PLANCARTE-GARCIA, individually and in her official capacity as Director of Imperial County Behavioral Health Services for the COUNTY OF IMPERIAL; DOES 30-44, individually and in their official capacities as employees with Imperial County Behavioral Health Services for the COUNTY OF IMPERIAL; DOES 45-50, individually and in their official capacities as supervising employees with Imperial County Behavioral Health Services for the COUNTY OF IMPERIAL; and DOES 51-60, individually and in their official capacities as employees or agents for the COUNTY OF IMPERIAL,

DEFENDANTS,                    **DEMAND FOR JURY TRIAL**

## I.

## INTRODUCTION

On December 5, 2022, an Imperial County Sheriff's Office ("ICSO") deputy shot Alberto Gomez twice in the heart and killed him while he was in the midst of a mental health crisis. Just ninety seconds before he was killed Alberto Gomez had been sitting at the side of his house, unarmed, with a puppy in his lap that was comforting him and licking his face as he suffered from his mental illness. He was 28 years old. The killing took place in front of his sixty-five-year-old father, Juan Gomez, who watched helplessly as three ICSO deputies, in direct contradiction of all legitimate law enforcement training, used tactics of escalation instead of de-escalation to aggressively and forcefully confront, manhandle, and unlawfully detain his mentally ill son. These tactics led to a scuffle between Alberto Gomez and the ICSO deputies which resulted in him first being tased, and then shot and killed, after he broke free and approached two of the deputies with a roofing

shovel.   Alberto Gomez's tragic death was entirely avoidable.   It was the result of a combination of grievous errors involving the ICSO and its deputies,  Imperial County Behavioral Health Services ("ICBHS") and its employees, and other employees of the County of Imperial.

The ICSO, the ICBHS, and the individual deputies involved in the shooting were well aware that Alberto Gomez suffered a mental illness.   The ICSO had previously placed a '5150' involuntary psychiatric hold on him, and was at his home just the day before the shooting, responding to several 911 calls placed by Alberto Gomez's sister who begged the responding deputies to help her brother who was suffering a mental health crisis.   The ICSO deputies who responded that day informed her there was nothing they could do and left. The next morning, the date of the shooting, Juan Gomez took his son to ICBHS, during normal business hours, and requested help for his son and that he be evaluated.   The ICBHS had been counseling and administering medication to Alberto Gomez for years but on this date turned him away claiming there was nobody at that time who could assist him.

Later that day, the three ICSO deputies responded to a call of a disturbance at Alberto Gomez's residence.   The ICSO deputies consisted of two rookies and one senior deputy. The senior deputy was training one of the rookies.   The senior deputy suffered from anxiety, which caused him to experience symptoms associated with having panic attacks, including heart palpitations and ringing ears.   Notwithstanding the fact that the senior deputy suffered anxiety, the ICSO allowed him to continue to respond to high-stress situations.

From the moment the senior deputy arrived on the scene he appeared to be in an agitated and aggressive mood.   He yelled at his trainee to "get the fuck out!" of the car and proceeded to grab his trainee by the shoulders and push him in the direction of Alberto Gomez when he thought the trainee wasn't approaching him fast enough.   Before they even came within eight feet of Alberto Gomez, the senior deputy yelled at his trainee to "detain, detain, detain!" him.   At no point did any of the ICSO deputies ask for assistance from the ICBHS' Mobile Crisis Response Team or Co-Response Team, both of which purportedly

exist for the purpose of assisting ICSO deputies who are dealing with an individual suffering a mental health crisis.  They did not ask for assistance when they received the call of the disturbance and knew or should have known at that point, based on the ICSO's history with Alberto Gomez, that he was mentally ill.  The did not ask for assistance  when they arrived at the scene and Juan Gomez told the ICSO deputies that his son was mentally ill and suffered from schizophrenia.   They did not ask for assistance when they saw him sitting on the ground, clearly in the midst of a mental health crisis, begging for the ICSO deputies to call him an ambulance.  Instead, rather than slowing the situation down and/or backing off until mental health backup could arrive, they  rushed him, violating all known rules and procedures for dealing with a person suffering a mental health crisis.  Ninety seconds later Alberto Gomez was dead.

## II.

## JURISDICTION AND VENUE

1.     This action arises under 42 U.S.C. § 1983, et seq., for the violations of Plaintiff's constitutional rights, and under 42 U.S.C. § 12131, et seq., for the violations of Plaintiff's federally protected rights under the Americans with Disabilities Act.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2.     Venue in this Court is proper under 28 U.S.C. § 1391.  The unlawful acts, omissions, and practices alleged herein occurred within the County of Imperial, which is within the Southern District of California.

3.     Plaintiff filed timely tort claims against the County of Imperial on May 26, 2023, within six months of the incident. The Board of Supervisors for the County of Imperial rejected the claims on June 29, 2023, and mailed notice of the rejection on June 30, 2023.

4.     The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### III.

### PARTIES

5.      Decedent, ALBERTO GOMEZ QUINTERO ("ALBERTO GOMEZ"), was an individual residing in the County of Imperial, in the State of California.  Decedent ALBERTO GOMEZ died intestate, unmarried, and without issue on December 5, 2022.  Decedent ALBERTO GOMEZ did not file any legal actions prior to his death.

6.      Plaintiff, JUAN GOMEZ, is ALBERTO GOMEZ's father.  JUAN GOMEZ is and was, at all times mentioned in this Complaint, residing in the County of Imperial. JUAN GOMEZ is suing both individually and for personal damages arising from the loss of his son, and as decedent ALBERTO GOMEZ's Successor-in-Interest for all claims surviving his death.  Exhibit A (Affidavit of Juan Gomez); Exhibit B (Death Certificate of Alberto Gomez).

7.      Defendant COUNTY OF IMPERIAL is a governmental entity organized and existing under the laws of the State of California. Defendant COUNTY OF IMPERIAL was responsible for the hiring, training, and supervision of the conduct, policies, practices, and customs of its employees and agents of the COUNTY OF IMPERIAL, and its Sheriff's Department, the Imperial County Sheriff's Office ("ICSO"), and all its deputies and members, and of Imperial County Behavioral Health Services ("ICBHS"), and all its employees and members.

8.      At all times material herein, Defendant COUNTY OF IMPERIAL was responsible for assuring that the actions, conduct, policies, procedures, and customs of the ICSO and ICBHS complied with the laws and Constitutions of the United States and the State of California.

9.      Plaintiff alleges, on information and belief, that COUNTY OF IMPERIAL is responsible for implementing, maintaining, sanctioning, or condoning a policy, custom or practice, under which the wrongful or illegal acts complained of herein occurred.  By reason of this policy, custom or practice, Defendant COUNTY OF IMPERIAL is liable for the

damages detailed herein.  Defendant COUNTY OF IMPERIAL is being sued directly under § 1983 (*Monell*) and under § 12132 for violation of the Americans with Disabilities Act. Defendant COUNTY OF IMPERIAL is also being sued under California state law with liability for the torts of its employees pursuant to *respondeat superior*.

10.    Defendant RAYMOND LOERA ("LOERA") was Sheriff for the COUNTY OF IMPERIAL at the time of ALBERTO GOMEZ'S death.  He was the final policymaker and decision maker for the ICSO and for the COUNTY OF IMPERIAL on matters relating to the ICSO, its deputies, employees, and agents.  He was also responsible for ensuring the COUNTY OF IMPERIAL's compliance with federal and state laws and constitutions and for the training and supervision of COUNTY OF IMPERIAL's employees and agents. Plaintiff contends that Defendant LOERA was personally on notice of the unconstitutional deficiencies in Defendant COUNTY OF IMPERIAL's policies, practices, and training regarding the use of force, its response to mentally impaired subjects, and the reasonable continuing use of available less-lethal alternatives that would render lethal force unreasonable, but with deliberate indifference failed to correct these constitutional deficiencies.  Plaintiff further contends that Defendant LOERA had knowledge that Defendant PEDRO MILLAN-GUZMAN  had a history of suffering from anxiety and that his anxiety caused PEDRO MILLAN-GUZMAN to experience symptoms associated with panic attacks, including heart palpitations and ringing in the ears, but with deliberate indifference failed to assign PEDRO MILLAN-GUZMAN to a less stressful division and instead allowed him to continue to respond to high-stress situations.

11.    Defendant FRED MIRAMONTES ("MIRAMONTES") was the Undersheriff for the COUNTY OF IMPERIAL at the time of ALBERTO GOMEZ's death.  He was the final policymaker and decision maker for the ICSO, its deputies, employees, and agents. He was also responsible for ensuring the COUNTY OF IMPERIAL's compliance with federal and state laws and constitutions and for the training and supervision of COUNTY OF IMPERIAL's employees and agents.  Plaintiff contends that Defendant MIRAMONTES

was personally on notice of the unconstitutional deficiencies in Defendant COUNTY OF IMPERIAL's policies, practices, and training regarding the use of force, its response to mentally impaired subjects, and the reasonable continuing use of available less-lethal alternatives that would render lethal force unreasonable, but with deliberate indifference failed to correct these constitutional deficiencies. Plaintiff further contends that Defendant MIRAMONTES had knowledge that Defendant PEDRO MILLAN-GUZMAN had a history of suffering from anxiety and that his anxiety caused PEDRO MILLAN-GUZMAN to experience symptoms associated with panic attacks, including heart palpitations and ringing in the ears, but with deliberate indifference failed to assign PEDRO MILLAN-GUZMAN to a less stressful division and instead allowed him to continue to respond to high-stress situations. Defendant MIRAMONTES arrived at the scene immediately following the killing of ALBERTO GOMEZ.

12.    Defendant SCOTT SHEPPEARD ("SHEPPEARD") was the Chief Deputy Sheriff for the COUNTY OF IMPERIAL at the time of ALBERTO GOMEZ's death. He was responsible for directing and implementing the goals and policies of the ICSO and acted as a representative for the Sheriff and Undersheriff at COUNTY OF IMPERIAL meetings. Prior to ALBERTO GOMEZ's death, SHEPPEARD was tasked by the ICSO with the responsibility of collaborating with mental health professionals to develop an education and response protocol for ICSO deputies responding to individuals suffering a mental health crisis. Defendant SHEPPEARD met with Defendant LETICIA PLANCARTE-GARCIA, Director of Imperial County Behavioral Health Services ("ICBHS") for the purpose of working together to create better policies and training for ICSO deputies responding to persons suffering a mental health crisis. This included coordination between the ICSO and ICBHS to allow mental health professionals from ICBHS' Crisis Co-Response Team and/or Mobile Crisis Response Team to respond to calls involving individuals suffering a mental health crisis so they could use their skills and training to prevent a situation from escalating. Plaintiff contends that Defendant

1  SHEPPEARD failed to develop an education and response protocol that would have

2  prevented ALBERTO GOMEZ's killing. Defendant SHEPPEARD was personally on notice

3  of the unconstitutional deficiencies in Defendant COUNTY OF IMPERIAL's policies,

4  practices, and training regarding the use of force, its response to mentally impaired subjects,

5  and the reasonable continuing use of available less-lethal alternatives that would render

6  lethal force unreasonable, but with deliberate indifference failed to correct these

7  unconstitutional deficiencies.  Plaintiff further contends that Defendant SHEPPEARD had

8  knowledge that Defendant PEDRO MILLAN-GUZMAN  had a history of suffering from

9  anxiety and that his anxiety caused PEDRO MILLAN-GUZMAN to experience symptoms

10  associated with panic attacks, including heart palpitations and ringing in the ears, but with

11  deliberate indifference failed to assign PEDRO MILLAN-GUZMAN to a less stressful

12  division and instead allowed him to continue to respond to high-stress situations.

13      13.    Defendant PEDRO MILLAN-GUZMAN ("MILLAN") was employed by the

14  COUNTY OF IMPERIAL as a deputy sheriff for the ICSO at the time of ALBERTO

15  GOMEZ's death.  Plaintiff contends that Defendant MILLAN is a senior deputy with the

16  ICSO and was the deputy with primary responsibility at the scene on the date of the killing

17  and was, in -fact, the deputy who shot and killed ALBERTO GOMEZ.  Plaintiff contends

18  that Defendant MILLAN acted with deliberate indifference when he failed to call for mental

19  health backup and instead escalated the situation by acting aggressively with ALBERTO

20  GOMEZ, performed an unlawful detention, and forcibly and aggressively battered

21  ALBERTO GOMEZ while he was suffering a mental health crisis, all of which led to

22  ALBERTO GOMEZ being shot and killed by Defendant MILLAN.  Plaintiff contends that

23  Defendant MILLAN encouraged the two other deputies at the scene to act aggressively

24  towards ALBERTO GOMEZ, including yelling and pushing his deputy trainee, Defendant

25  DUSTIN SYNDER, in the back towards ALBERTO GOMEZ when he believed he wasn't

26  moving quickly enough to detain him.  Plaintiff further contends that Defendant MILLAN

27  knew he suffered anxiety, that his anxiety caused symptoms associated with panic attacks,

28

including heart palpitations, and ringing ears, but with deliberate indifference to the safety of others, failed to request that he be assigned to a division within the ICSO that would not have required him to respond to high-stress calls.

14.    Defendant DUSTIN SYNDER ("SNYDER") was employed by the COUNTY OF IMPERIAL as a deputy sheriff for the ICSO at the time of ALBERTO GOMEZ's death. Defendant SNYDER was being trained by Defendant MILLAN on the date of the incident. Plaintiff contends that Defendant acted with deliberate indifference when he failed to call for mental health backup and instead escalated the situation by acting aggressively with ALBERTO GOMEZ, performed an unlawful detention, and forcibly and aggressively battered ALBERTO GOMEZ while he was suffering a mental health crisis, all of which led to ALBERTO GOMEZ being shot and killed by Defendant MILLAN.

15.    Defendant ALEJANDRO TAMAYO ("TAMAYO") was employed by the COUNTY OF IMPERIAL as a deputy sheriff for the ICSO at the time of ALBERTO GOMEZ's death.  Plaintiff contends that Defendant TAMAYO acted with deliberate indifference when he failed to call for mental health backup, failed to intervene when DEFENDANTS SYNDER and MILLAN performed an unlawful detention and instead escalated the situation by acting aggressively towards ALBERTO GOMEZ, joined in unlawfully detaining ALBERTO GOMEZ, and forcibly and aggressively battered ALBERTO GOMEZ while he was suffering a mental health crisis, all of which led to ALBERTO GOMEZ being shot and killed by Defendant MILLAN.

16.    Defendant LETICIA PLANCARTE-GARCIA ("PLANCARTE") was the director of Imperial Behavioral Health Services ("ICBHS") at the time of ALBERTO GOMEZ's death.  She was appointed by the COUNTY OF IMPERIAL Board of Supervisors and tasked with the responsibility of providing professional services for individuals suffering from mental illness.  She is the final policymaker and decision-maker for ICBHS and responsible for the training of its employees in al its units.  The ICBHS provides counseling services, dispenses and administers medication to individuals with

mental illness, and has a unit of trained mental health professionals who are required to work with the ICSO in responding to the scene of a person in mental health crisis. Plaintiff contends that he and ALBERTO GOMEZ went to IBHS on the morning of the incident, during regular business hours, and requested that ALBERTO GOMEZ be evaluated for a mental health crisis but was told there was nobody who could assist ALBERTO GOMEZ at that time. Plaintiff further contends that Defendant PLANCARTE failed to develop an education and response protocol that would have prevented ALBERTO GOMEZ's killing. Defendant PLANCARTE was personally on notice of the unconstitutional deficiencies in Defendant COUNTY OF IMPERIAL's policies, practices and training regarding its response to mentally impaired subjects, was tasked by the COUNTY OF IMPERIAL with the responsibility to collaborate with the ICSO to remedy these deficiencies, but with deliberate indifference failed to correct these unconstitutional deficiencies.

17. Defendant DOES 1-14 are ICSO deputies ("DOE DEPUTIES") who were involved with responding to ALBERTO GOMEZ's home on December 4-5, 2022, while ALBERTO GOMEZ was suffering a mental health crisis. Plaintiff is informed and believes that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth herein.

18. Defendant DOES 15-29 are ICSO deputies who were responsible for the training and supervising ("DOE SUPERVISING DEPUTIES") of Defendants MILLAN, SNYDER, TAMAYO, and ICSO deputies DEPUTY DOES 1-14.

19. Defendant DOES 30-44, are employees with IBHS (DOE IBHS EMPLOYEES) who were involved with treating, counseling, medicating, or providing other services to ALBERTO GOMEZ.

20. Defendant DOES 45-50, are IBHS employees who were responsible for the training and supervising of DOE ICBHS EMPLOYEES 30-44, and with working with the ICSO to provide better training and protocols for the COUNTY OF IMPERIAL's response to persons suffering a mental health crisis.

21.    Defendant DOES 50-60 are COUNTY OF IMPERIAL employees, agents, or contractors who were involved with the response to ALBERTO GOMEZ's home on December 4-5, 2022, while ALBERTO GOMEZ was suffering a mental health crisis.

## IV.

## FACTUAL ALLEGATIONS

**A.    The Circumstances Leading to Alberto Gomez's Killing**

22.    ALBERTO GOMEZ suffered from mental illness and had learning disabilities. As a child he was placed in special education classes.  Over ten years ago he was diagnosed as schizophrenic.  Individuals with schizophrenia can suffer from delusions, hallucinations, unusual physical behavior, disorganized thinking and speech, and have paranoid thoughts. Nearly a quarter of all people killed by law enforcement suffer from a mental illness.[1]

23.    JUAN GOMEZ is ALBERTO GOMEZ's father.  They lived in the same house and JUAN GOMEZ and ALBERTO GOMEZ provided care and comfort to one another.

24.    Both the Imperial County Behavioral Health Services (ICBHS") and the Imperial County Sheriff's Office ("ICSO") knew well before the day he was killed that he was both mentally ill and that he experienced episodes of mental health crisis.

25.    The ICBHS provided ALBERTO GOMEZ with counseling services and both prescribed and administered him medication to treat his schizophrenia.  JUAN GOMEZ previously called ICBHS when his son was experiencing a mental health crisis and asked them for help. Each time he called, however, he was informed by ICBHS employees that they could not come to his house and that his only options were to  bring ALBERTO GOMEZ to their office himself, or call the ICSO to evaluate him for an involuntary 5150 psychiatric hold.

---

[1] *See* Eric Westervelt, "Mental Health and Police Violence: How Crisis Intervention Teams are Failing," NPR, September 18, 2020, available at: https://www.npr.org/2020/09/18/913229469/mental-health-and-police-violence-how-crisis-intervention-teams-are-failing

26.    The ICSO was called on at least three separate dates over the last three years by ALBERTO GOMEZ's father and sister when he was experiencing a mental health crisis.

27.    Approximately three years ago, JUAN GOMEZ called 911 and/or the ICSO for assistance when his son was experiencing a mental health crisis. ALBERTO GOMEZ was acting strangely and locked himself in the bathroom. JUAN GOMEZ feared his son would harm himself and busted the bathroom door down moments before an ICSO deputy arrived at his home. ALBERTO GOMEZ had slit his wrist with a knife and was lying on the bathroom floor in a pool of blood. He was taken to the hospital and then placed on an involuntary psychiatric hold pursuant to California Welfare and Institutions Code § 5150 by the responding ICSO deputy.

28.    On December 4, 2022, the day before ALBERTO GOMEZ was killed, his sister called both the ICSO and 911 begging for help for her brother who was having a mental health crisis. Each time she called she was assured that ICSO deputies were on their way. It took several calls to 911, and the passage of a significant amount of time, before the ICSO deputies arrived at the home. JUAN GOMEZ and ALBERTO GOMEZ's sister explained to the responding deputies that ALBERTO GOMEZ was mentally ill, suffered from schizophrenia, that he had harmed himself in the past, and that was having a mental health crisis and had locked himself in his bedroom. They pleaded with the ICSO deputies to place a 5150 hold on him so he could be evaluated and treated. The responding deputies stated that they believed he appeared "fine" and that there was nothing they could do. When JUAN GOMEZ and ALBERTO GOMEZ's sister asked the responding deputies what they were supposed to do if his mental health crisis worsened, they replied that they could give the deputies another call.

29.    On the morning of December 5, 2022, the day ALBERTO GOMEZ was killed, JUAN GOMEZ took his son to ICBHS, during normal business hours, asking for help. He explained that ALBERTO GOMEZ was experiencing a mental health crisis and that he needed to be seen by a doctor. JUAN GOMEZ was told by one or more ICBHS employees

that there was nobody who could see his son at that time and that they would call him later in the day to let him know when his son could return.  ALBERTO GOMEZ and JUAN GOMEZ went back to their home.  ICBHS did not call.

30.    ALBERTO GOMEZ's mental health crisis continued. He was mumbling to himself, saying things to his father that didn't make sense, and pacing.  In the late morning/early afternoon, he told his father that he needed his cellular phone.  JUAN GOMEZ gave him his phone, knowing from past experience that he would not stop asking for it until he gave it to him.  ALBERTO GOMEZ then went to another part of the house. Approximately a half hour later, ALBERTO GOMEZ returned the phone to his father.

31.    When JUAN GOMEZ attempted to use his phone he realized he couldn't make any calls or send texts.  This was not surprising to JUAN GOMEZ.  ALBERTO GOMEZ was paranoid of cell phone technology and  would often ask for JUAN GOMEZ's  phone and then change the settings so that his father could not make calls or access the phone's other functions.

32.    JUAN GOMEZ left his home and walked to his daughter-in-law's house next door.  His daughter-in-law had previously assisted JUAN GOMEZ with restoring his phone settings after they were changed by ALBERTO GOMEZ.  She informed JUAN GOMEZ that she could not fix his phone on this occasion, however, because it was missing the SIM card, which was necessary to send and receive calls and texts.  JUAN GOMEZ left his daughter-in-law's house when he heard vehicles approaching his home.

33.    ICSO deputy ALEJANDRO TAMAYO ("Defendant TAMAYO") was the first to arrive at JUAN GOMEZ's home.  He was responding to a call made by a person presently unknown to Plaintiff who reported a disturbance in or around the house. Defendant TAMAYO had been with the ICSO approximately 18 months.  He arrived at the scene at 1:11:51 p.m.

34.    Defendant TAMAYO radioed that the "subject, black shirt, just ran back inside" his house.  Seconds later an ISCO vehicle sped down the road and stopped in front

of JUAN GOMEZ's home.  In the vehicle were ICSO deputies DUSTIN SNYDER ("Defendant Snyder") and PEDRO MILLAN-GUZMAN ("Defendant MILLAN"). Defendant SNYDER had been with the ICSO less than two months.  Prior to joining the ICSO he was an instructor at "Defensive Tactics and Firearms," a company that taught defensive tactics to individuals in Southern California.

35.    Defendant SNYDER was being trained by Defendant MILLAN, a senior deputy with the ICSO.  Bodycam footage reveals MILLAN suffered from anxiety and that he admitted to experiencing symptoms commonly associated with panic attacks, including ringing ears and heart palpitations. A panic attack is a sudden episode of intense fear which triggers extreme physical reactions and responses where no real danger exists and can interfere with critical decision making.  Defendants MILLAN and SNYDER arrived at the scene at 1:13:49 p.m.

36.    Defendant MILLAN arrived on the scene already in an agitated and aggressive mood.  After getting out of the ICSO vehicle, he yelled at his trainee, Defendant SYNDER to "get the fuck out!" of the car.

37.    Defendants TAMAYO, MILLAN,  and SNYDER were standing on the road in front of his house when JUAN GOMEZ approached by foot from his daughter-in-law's house.  JUAN GOMEZ spoke first with Defendant TAMAYO who asked him in Spanish if he lived at the house. JUAN GOMEZ went on to explain that he did and that ALBERTO GOMEZ was his son.  Defendant MILLAN then asked  ALBERTO GOMEZ in Spanish if ALBERTO GOMEZ was armed.  JUAN GOMEZ said he "*had"* a BB-rifle in his hand. Defendant MILLAN then told Defendant SNYDER, who only spoke English, that ALBERTO GOMEZ "has" a BB-rifle.  JUAN GOMEZ further explained that his son took his phone and that he might be "burning it."

38.    As JUAN GOMEZ continued to speak with Defendants SYNDER AND MILLAN, Defendant TAMAYO walked away from the group along the street towards the

1    left side of the house.   Seconds later he announced that he spotted ALBERTO GOMEZ.

2    It was 1:14:19 p.m.

3        39.    ALBERTO GOMEZ was sitting at the side of his house with his back against

4    a shed.  ALBERTO GOMEZ was alone, unarmed, and had a puppy in his lap that licked his

5    face as ALBERTO GOMEZ moaned and rubbed his forehead with his hand.  A walkway

6    separated the house from the shed.  ALBERTO GOMEZ was sitting close to the rear of the

7    property and was at least 50 feet from where Defendant TAMAYO stood.

8        40.    As soon as Defendant MILLAN heard that ALBERTO GOMEZ was spotted

9    he told  SNYDER to "Go."  Defendant SNYDER walked briskly to where Defendant

10   TAMAYO was standing.  Defendant MILLAN and JUAN GOMEZ followed.  As

11   Defendant MILLAN and JUAN GOMEZ walked down the road towards Defendant

12   TAMAYO, JUAN GOMEZ told Defendant MILLAN that ALBERTO GOMEZ was

13   "mentally ill" and "agitated."

14       41.    Defendant SNYDER stood next to Defendant TAMAYO and watched

15   ALBERTO GOMEZ from a distance for less then three seconds before Defendant MILLAN

16   told Defendant SNYDER to "Talk to him, contact him."  When Defendant SNYDER

17   hesitated, Defendant MILLAN grabbed him by the shoulders and pushed him in the

18   direction of ALBERTO GOMEZ, and shouted at him, "Go, go, let's go!"  JUAN GOMEZ

19   tried to follow but was told by Defendant MILLAN to wait at the front of the house.

20       42.    Defendant TAMAYO stood with JUAN GOMEZ as Defendants SNYDER and

21   MILLAN moved quickly towards ALBERTO GOMEZ. Defendant TAMAYO asked JUAN

22   GOMEZ, "What does your son have?"  JUAN GOMEZ responded, "Schizophrenia."

23   JUAN GOMEZ then told Defendant TAMAYO, "It took you a long time for you to get

24   here."  Defendant TAMAYO responded by asking JUAN GOMEZ if he was doing "okay."

25   JUAN GOMEZ replied, "I'm nervous."

26       43.    Before they approached the walkway, Defendant SNYDER hesitated again,

27   stopping and turning to Defendant MILLAN who was following him from behind.

28

Defendant MILLAN raised his hands and told him to "Go."  Defendant SNYDER proceeded to approach ALBERTO GOMEZ.  As he walked towards him he said to him in English, "Hey bud, hey dude."  ALBERTO GOMEZ responded in Spanish saying something about his father. Defendant SNYDER then asked ALBERTO GOMEZ, "Hablas Ingles?"  ALBERTO GOMEZ replied, "Huh."  Defendant SNYDER then asked him in English if he was "Okay."  Defendant MILLAN then interjected, shouting at Defendant SNYDER, "detain, detain, detain!"

44.    Defendant SNYDER grabbed ALBERTO GOMEZ's left wrist and shoulder and  Defendant MILLAN grabbed his other arm.  It was 1:15:02 p.m.

45.    ALBERTO GOMEZ cried out that he "didn't do anything," and begged the deputies to, "Call an ambulance."  Without telling him why he was detained, or asking him any further questions, they proceeded to forcefully lift him from his seated position.

46.    As ALBERTO GOMEZ continued to tell the officers that he didn't "do anything," Defendant MILLAN radioed "148," the code for resisting arrest, and proceeded to strengthen his grip on ALBERTO GOMEZ's arm.  ALBERTO GOMEZ shouted, "oh my God!" before he was thrown or tripped, and fell  to the ground, with both deputies landing on top of him.

47.    Defendant TAMAYO, who had been watching the scene unfold while standing next to JUAN GOMEZ, ran to assist the deputies.  The three deputies then attempted to hold ALBERTO GOMEZ down on the ground while he tried to free himself from their grip.

48.    ALBERTO GOMEZ was clearly agitated at this point and repeatedly begged the deputies to kill him.  During the struggle, and while still lying on the ground, ALBERTO GOMEZ grabbed Defendant MILLAN's baton from his belt and hit him on the side of his head.  The baton glanced off the side of Defendant MILLAN's head without causing serious injury.

49.    Defendant MILLAN  pulled out his taser gun and tased ALBERTO GOMEZ in the chest.  The taser did not keep ALBERTO GOMEZ down.  He got up and grabbed a

1  roofing shovel near the side of the house and moved towards Defendants MILLAN and

2  SNYDER with the shovel raised.  Defendants SNYDER and MILLAN ran to the rear of the

3  house where they stopped and Defendant MILLAN fired two shots at ALBERTO

4  GOMEZ's heart.  He was shot at 1:16:31 p.m., less than 90 seconds after Defendants

5  SNYDER and MILLAN first laid hands on him.  ALBERTO GOMEZ landed first on his

6  knees, staying upright for just few seconds before he collapsed to the ground.  He died

7  within seconds.

8       50.    The toxicology report found that ALBERTO GOMEZ did not have any drugs

9  nor alcohol in his system at the time of his death.

10      51.    The autopsy report states that a SIM card was found in his stomach contents.

11  **B.    County of Imperial has History of Failing those Suffering from Mental Illness**

12      52.    The COUNTY OF IMPERIAL, with a population of 180,000 residents, lacks

13  the resources and training to protect and care for its mentally ill population.

14      53.    The United States federal government has deemed the COUNTY OF

15  IMPERIAL a "shortage area," meaning it lacks the number of health professionals needed

16  for a community its size.  The COUNTY OF IMPERIAL has 20,000 residents for every

17  local psychiatrist.

18      54.    As a result, the COUNTY OF IMPERIAL has failed to adequately care for and

19  protect its mentally ill population and has a shortage of resources for mental health services.

20  In fact, data shows that the COUNTY OF IMPERIAL may have violated the law when

21  responding to mentally ill persons in crisis.

22      55.    An article appearing on September 22, 2022, by Jennifer Bowman, assistant

23  editor with inewsource, found that the ICSO may have repeatedly violated California law

24  and the right to due process by detaining mentally ill persons and placing them on 5150

25  holds for longer than the 72-hours allowed by law.[2]

26  _____

27      [2] Jennifer Bowman, "Imperial County's use of psychiatric holds appears to violate

28  state law," inewsource, September 27, 2022, available at:

56.     Disability Rights California, a nonprofit organization that works to advance the rights of Californians with disabilities, has labeled the ICSO's practice of back-to-back 5150 holds illegal.  In the last decade, the COUNTY OF IMPERIAL used back-to-back holds more than 1,000 times.

57.     The COUNTY OF IMPERIAL's failures extend beyond the illegal use of 5150 holds.  It includes the failure to properly implement and utilize Crisis Intervention Training and Crisis Intervention Teams for dealing with individuals suffering a mental health crisis.

58.     Both the federal government and California have acknowledged that law enforcement have failed historically in their response to mentally ill individuals in crisis.  As a result, law enforcement in California is required to provide CIT to its employees and to ensure that the training meets the goals of slowing down interactions with mentally ill persons and uses techniques of de-escalation to ensure that mentally ill persons in crisis are not further traumatized and that they can get the help they need.

59.     Ostensibly recognizing the need for better response to the needs of its mentally ill population as early as 2020, the COUNTY OF IMPERIAL tasked ICSO Chief Deputy SHEPPEARD and ICBHS Director PLANCARTE with the responsibility of working together to create better policies and training for ICSO deputies responding to persons suffering a mental health crisis.  This included coordination between the ICSO and ICBHS to allow mental health professionals from ICBHS' Crisis Co-Response Team and/or Mobile Crisis Response Team to respond to calls involving individuals suffering a mental health crisis so they could use their skills and training to prevent a situation from escalating.   The Crisis Co-Response team's stated existence is to assist law enforcement out in the field with 5150 calls.  The Mobile Crisis Response Team's stated existence is to provide field-based de-escalation services for law enforcement who request assistance with an individual in the midst of a mental health crisis.

_____

https://inewsource.org/2022/09/22/imperial-county-serial-psychiatric-holds/

COMPLAINT
18

60.     The inewsource investigative article from September 22, 2022, however, found that the COUNTY OF IMPERIAL partners involved in the mental health system found it difficult to communicate and collaborate with one another.

61.     This failure was evident on the day of ALBERTO GOMEZ's death when not one of the responding ICSO deputies called for mental health backup or used de-escalation techniques while he was clearly suffering a mental health crisis.

62.     The COUNTY OF IMPERIAL has also failed with respect to Defendant MILLAN's anxiety diagnosis.   Upon information and belief, Defendants LOERA, MIRAMONTES, and SHEPPEARD knew, acted with deliberate indifference, or should have known, that Defendant suffered from anxiety and that he had symptoms associated with panic attacks, including heart palpitations and ringing ears.   Despite this knowledge, they allowed him to respond to high-stress calls rather than assigning him to another division.   The COUNTY OF IMPERIAL's failure in this regard results from a lack of training and resources for ICSO deputies and supervisors, including a protocol that would have removed Defendant MILLAN from high-stress calls and prevented him from responding to ALBERTO GOMEZ's home.

63.     Defendants LOERA, MIRAMONTES, SHEPPEARD, PLANCARTE, and the COUNTY OF IMPERIAL were aware of the systemic failures in their collective approach to responding to mentally ill person suffering a mental health crisis.   Furthermore, they knew, or acted with deliberate indifference, or negligence that their failures could lead to the injury or death of a person suffering a mental health crisis.

//

//

//

//

//

//

# FIRST CAUSE OF ACTION

**42 U.S.C. § 1983: Unlawful Seizure & Excessive Force under the 4th Amendment**

**(Against Defendants MILLAN, SNYDER, and TAMAYO)**

64.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-63.

65.    Defendants MILLAN, SNYDER, and TAMAYO knew that ALBERTO GOMEZ was mentally ill and suffered from mental health crisis before they even arrived at his home on December 5, 2022.  Approximately three years' earlier the ICSO placed a 5150 hold on him after his father, JUAN GOMEZ, called 911 reporting his son was having a mental health crisis and he was found by an ICSO deputy lying in the bathroom in a pool of blood after cutting his wrist.

66.    ICSO deputies also responded to his house just the day before he was killed, on December 4, 2022, after ALBERTO GOMEZ's sister repeatedly called 911 asking for help for her mentally ill brother who was suffering a mental health crisis.

67.    Defendants MILLAN, SNYDER, and TAMAYO also knew that ALBERTO GOMEZ was mentally ill and suffering from a mental health crisis when they arrived at his home.   Bodycam reveals that JUAN GOMEZ informed MILLAN, SNYDER, and TAMAYO, that his son was mentally ill, suffered from schizophrenia, and was "agitated."

68.    Defendants MILLAN, SNYDER, and TAMAYO also knew that ALBERTO GOMEZ was mentally ill and suffering from a mental health crisis when they first encountered him.  ALBERTO GOMEZ was sitting alone, unarmed, and at the rear-back of his house, at least 50 feet from the street, with a puppy in his lap that was licking his face, as ALBERTO GOMEZ moaned and rubbed his face with his hand

69.    All legitimate law enforcement policies and training dictates that deputies in this situation use tactics of de-escalation when dealing with a person suffering a mental health crisis.  This includes slowing the interaction down, providing the person in crisis space, calling for backup from mental health professionals,  and using other techniques of

1  de-escalation to ensure the mentally ill person's safety.  Defendants MILLAN, SNYDER,

2  and TAMAYO did not utilize any of those techniques.

3        70.    Defendants MILLAN, SNYDER, and TAMAYO instead rushed ALBERTO

4  GOMEZ, shouting at him and with their minds made up to detain him before they were even

5  within 8 feet.    When Defendant SNYDER didn't move quickly enough, Defendant

6  MILLAN pushed him and yelled at him to go faster.  Defendants MILLAN, SNYDER, and

7  TAMAYO ignored ALBERTO GOMEZ's pleas for an ambulance and instead forcefully

8  and aggressively, confronted, battered, and unlawfully detained him, all of which ultimately

9  led to him being shot and killed by Defendant MILLAN.

10        71.    The use of force against ALBERTO GOMEZ under these circumstances was

11  excessive and unreasonable and deprived him of his rights, privileges, and immunities

12  guaranteed to him by the Fourth and Fourteenth Amendments to the Constitution in

13  violation of § 1983.

14        72.    These actions and omissions were done recklessly, knowingly, intentionally,

15  and for the purpose of vexing and injuring ALBERTO GOMEZ, and to maliciously deprive

16  him of his constitutional rights.  As a result, Plaintiff is entitled to exemplary and punitive

17  damages in an amount to be proved.

18        73.    Additionally, Plaintiff was required to retain an attorney to institute this

19  Complaint and is entitled, therefore, to reasonable attorneys' fees pursuant to § 1988.

20  ## SECOND CAUSE OF ACTION

21  **42 U.S.C. § 1983: 14th Amendment Due Process Right to Familial Relationship**

22  **(Against Defendants MILLAN, SNYDER, and TAMAYO)**

23        74.    Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1-

24  73 of this Complaint.

25        75.    Defendants MILLAN, SNYDER, and TAMAYO, acting under color of law,

26  deprived JUAN GOMEZ of his substantive due process right under the Fourteenth

27  Amendment to enjoy a familial relationship with ALBERTO GOMEZ.

28

76. As set forth above, Defendants MILLAN, SNYDER, TAMAYO, and DOES 1-14 acted intentionally when they, in direct contradiction of all legitimate law enforcement training, used tactics of escalation instead of de-escalation to aggressively and forcefully confront, batter, and unlawfully detain ALBERTO GOMEZ while he was suffering a mental health crisis rather than call for mental health backup, all of which resulted in him being shot and killed by Defendant MILLAN. Defendants, MILLAN, SNYDER, and TAMAYO's unconstitutional conduct, committed while under color of state law, shocks the conscience.

77. As a result of this constitutional violation, Plaintiff is entitled to compensatory damages under 42 U.S.C. § 1983, in an amount to be proven at trial.

78. Plaintiff is further entitled to costs and reasonable attorney's fees under 42 U.S.C. § 1988.

79. Defendants MILLAN, SNYDER, and TAMAYO, acted with deliberate and reckless disregard of ALBERTO GOMEZ's constitutional rights. Plaintiff therefore seeks an award of punitive damages against Defendants in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983 - 14th Amendment - Deliberate Indifference**

**(By Plaintiff as Successor-in-Interest against Defendant COUNTY OF IMPERIAL)**

80. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-79.

81. As alleged herein, the COUNTY OF IMPERIAL and it employees at the ICSO and ICBHS, have a history of failing to provide for, and protect, its mentally ill population. That history includes the failure to implement and/or further develop programs and training to protect persons suffering from a mental health crisis. Despite the COUNTY OF IMPERIAL being aware that it needed to provide better care to persons suffering from a mental health crisis, that its ICSO deputies needed to be trained in proper de-escalation techniques, and that the ICSO and ICBHS needed to coordinate and implement, and/or further develop, a system by which mental health professionals could assist ICSO deputies

in the field, it failed to do so. The COUNTY OF IMPERIAL's failure was with deliberate indifference to the rights of individuals suffering from mental illness.

82.    Defendant COUNTY OF IMPERIAL also acted through, and is liable for, their final policymakers, Defendants LOERA, MIRAMONTES, PLANCARTE, and other employees who were delegated final policymaking authority. Defendants LOERA, MIRAMONTES, and PLANCARTE were aware of the need to better train ICSO deputies in responding to persons suffering a mental health crisis, and to coordinate and implement a joint response between the ICSO and ICBHS to individuals in such crisis, but failed to do so with deliberate indifference to the rights of individuals suffering from mental illness.

83.    The failures by Defendant COUNTY OF IMPERIAL caused the deprivation of ALBERTO GOMEZ's rights when Defendants MILLAN, SNYDER, and TAMAYO failed to use de-escalation techniques despite having actual knowledge that ALBERTO GOMEZ was mentally ill, unarmed, and suffering a mental health crisis, and instead rushed him, aggressively and forcefully battering him, and unlawfully detaining him, all of which ultimately resulted in him being shot and killed.

84.    Defendant COUNTY OF IMPERIAL's actions and omissions actually and proximately caused ALBERTO GOMEZ's constitutional deprivations and injuries.

**FOURTH CAUSE OF ACTION**

**Violation of § 12131 et seq. (Americans with Disabilities Act)**

**(Plaintiff as Successor-in-Interest  against COUNTY OF IMPERIAL)**

85.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-84.

86.    ALBERTO GOMEZ was previously diagnosed with schizophrenia, a mental illness covered under the Americans with Disabilities Act. As such, he is afforded protection from the exclusion or denial of benefits of services provided by COUNTY OF IMPERIAL or from otherwise being discriminated against by the COUNTY OF IMPERIAL. See 42 U.S.C. § 12132.

87.     As detailed herein, both the ICSO and its employees, and the ICBHS and its employees, were well aware that ALBERTO GOMEZ suffered a mental illness protected under the ADA and that his mental illness caused him to suffer mental health crisis.

88.     Notwithstanding this knowledge, Defendants failed to provide him with reasonable accommodations to address his mental illness.

89.     On December 5, 2022, Defendants MILLAN, SNYDER, and TAMAYO knew that ALBERTO GOMEZ suffered a mental illness, that he was in the midst of a mental health crisis, that he was unarmed and sitting at the back of his house safely away from others with his puppy in his lap, and that he was not threatening others.  Rather than providing the reasonable accommodations required under the ADA, such as de-escalation, these Defendants employed tactics of escalation, by moving quickly towards him and aggressively and forcefully shouting at him, battering him, and unlawfully detaining him. All legitimate training in de-escalation tactics involving a person suffering from schizophrenia, or any mental illness, dictates that such escalation techniques are counter-productive and should be expected to escalate the situation by causing the person suffering the mental illness to perceive the situation as a threat.   These Defendants had other options available.  In addition to using the CIT techniques of slowing the situation down and employing de-escalation techniques, these Defendants should have allowed ALBERTO GOMEZ to remain at the side of the house with his puppy in his lap that was comforting him by licking his face until mental health professionals from ICBHS could respond to the scene.   Instead, these Defendants sped up their response and escalated the situation, ultimately killing him within minutes of arriving at the scene.

90.     As detailed herein, Defendants COUNTY OF IMPERIAL, LOERA, MIRAMONTES, SHEPPEARD, and DOES 15-29, failed to properly educate and train ICSO deputies  in the proper handling of situations involving a person suffering a mental health crisis and have not adopted and/or enforced appropriate policies and procedures that would ensure ICSO deputies accommodate a mentally ill person in a non-discriminatory

1  manner.  On information and belief, it is alleged that Defendants knew their training and/or

2  enforcement of policies and procedures was insufficient to prevent the discrimination

3  against mentally ill persons by ICSO deputies, but acted with deliberate indifference to

4  these failures.

5      91.    As detailed herein, Defendants COUNTY OF IMPERIAL, SHEPPEARD,

6  PLANCARTE, and DOES 45-50, failed to develop and implement an effective system by

7  which ICBHS mental health professionals could assist ICSO deputies in the field who were

8  responding to individuals suffering a mental health crisis.  Upon information and belief, it

9  is alleged that these Defendants failed to train their respective employees on techniques to

10  de-escalate situations involving a mentally ill person in crisis, or to coordinate responses

11  between the ICSO and ICBHS to respond to such calls.  It is alleged that these Defendants

12  knew their training and failure to implement a joint response system between ICSO and

13  ICBHS would effectively deprive persons with a mental illness from benefits and services

14  under the ADA but acted with deliberate indifference to these failures.

15      92.    As detailed herein, Defendant DOES 30-44, were employees with ICBHS.  On

16  the morning of December 5, 2022, the day of the shooting, Defendant DOES 30-44, failed

17  to accommodate ALBERTO GOMEZ's request that he be treated because he was suffering

18  a mental health crisis by telling him to go home and wait for a call from ICBHS.  These

19  Defendants turned ALBERTO GOMEZ away from their facility notwithstanding the fact

20  that he was a known patient, that he suffered from mental illness, and that JUAN GOMEZ

21  informed these Defendants that his son was experiencing a mental health crisis.  It is alleged

22  that the failure of these Defendants to accommodate ALBERTO GOMEZ when he and his

23  father asked for help demonstrate deliberate indifference to ALBERTO GOMEZ's

24  disability.

25      93.    As detailed herein, Defendant DOES 1-14, were involved with the response

26  to ALBERTO GOMEZ's home on December 4, 2022, the day before the shooting.  It is

27  alleged, upon information and belief, that these Defendants failed to place ALBERTO

28

GOMEZ under an involuntary 5150 psychiatric hold for his own safety. It is alleged that the failure of these Defendants to place a 5150 hold on ALBERTO GOMEZ when he had locked himself in his room, had a history of harming himself, and was informed by both JUAN GOMEZ and ALBERTO GOMEZ's sister that he needed mental health treatment, demonstrated deliberate indifference to ALBERTO GOMEZ's disability.

94. ALBERTO GOMEZ died as a direct and foreseeable consequence of all the Defendants' actions described herein. ALBERTO GOMEZ suffered special damages, along with further damages that will be proven at trial. Additionally, Defendant COUNTY OF IMPERIAL should pay reasonable attorneys' fees pursuant to 42 U.S.C. § 12205.

## FIFTH CAUSE OF ACTION

### Violation of California Government Code § 11135 (California ADA)

### (Plaintiff as Successor-in-Interest against COUNTY OF IMPERIAL)

95. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-94.

96. California Government Code § 11135(a) prohibits any person with a disability from being discriminated against, or denied benefits, based on their disability, from a program or activity that is funded directly from California or receives any financial assistance from California.

97. The ICSO and ICBHS are agencies of Defendant COUNTY OF IMPERIAL. The COUNTY OF IMPERIAL receives financial assistance from the State of California.

98. Through its acts and omissions described herein, Defendant COUNTY OF IMPERIAL violated § 11135 by unlawfully denying ALBERTO GOMEZ the benefits of, and unlawfully subjecting him to discrimination under, the programs and activities of the COUNTY OF IMPERIAL.

//

//

//

//

## SIXTH CAUSE OF ACTION

### Battery

### (Plaintiff as Successor-in-Interest against Defendants MILLAN, SNYDER, and TAMAYO)

99.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-98.

100.    Defendants MILLAN, SNYDER, and TAMAYO, battered ALBERTO GOMEZ without provocation while he was suffering a mental health crisis.

101.    Defendants knew ALBERTO GOMEZ was suffering a mental health crisis, was unarmed, and was sitting with a dog in his lap before they approached him.

102.    Defendants intentionally grabbed ALBERTO GOMEZ by his arms and forcefully yanked him from his seated position despite his pleas for an ambulance.  This resulted in an unlawful detention which eventually resulted in ALBERTO GOMEZ being killed.

103.    ALBERTO GOMEZ did not consent to being forcefully manhandled and was harmed as a result of their conduct.

104.    A reasonable person in ALBERTO GOMEZ's situation would have been offended by Defendants' touching.

105.    Defendants' conduct was neither privileged nor justified under California statute or common law.

106.    As a proximate result of Defendants' conduct, Plaintiff suffered damages as hereinafter set forth.

107.    Defendant COUNTY OF IMPERIAL is liable to Plaintiff for the acts of Defendants MILLAN, SNYDER, TAMAYO pursuant to the doctrine of Respondeat Superior under California Government Code § 815.2.

//

//

//

## SEVENTH CAUSE OF ACTION

### ASSAULT

### (Plaintiff as Successor-in-Interest against Defendants MILLAN, SNYDER, and TAMAYO)

108.   Plaintiff re-alleges and incorporates by reference herein paragraphs 1-107.

109.   Defendants MILLAN, SNYDER, and TAMAYO, placed ALBERTO GOMEZ in immediate fear of death and severe bodily harm when they approached him in a manner reasonably appearing to be threatening and which ALBERTO GOMEZ reasonably believed would be carried out against his person. ALBERTO GOMEZ did not consent to Defendants' conduct which was a substantial factor in causing him harm.

110.   Defendants' conduct was neither privileged nor justified under California statute or common law.

111.   As a proximate result of Defendants' conduct, Plaintiff suffered damages as hereinafter set forth.

112.   Defendant COUNTY OF IMPERIAL is liable to Plaintiff for the acts of Defendants MILLAN, SNYDER, TAMAYO pursuant to the doctrine of Respondeat Superior under California Government Code § 815.2.

## EIGHTH CAUSE OF ACTION

### Wrongful Death

### (By Plaintiff Against all Defendants )

113.   Plaintiff re-alleges and incorporates by reference herein paragraphs 1-112.

114.   As alleged above, the killing of ALBERTO GOMEZ resulted from a combination of grievous errors, involving the ICSO and its deputies, ICBHS and its employees, and other employees of the COUNTY OF IMPERIAL, all of whom had a duty of care to avoid causing unnecessary harm to those suffering a mental illness.

115.   On December 5, 2022, ALBERTO GOMEZ was experiencing a mental health crisis while he sat alone, unarmed, and with his puppy his lap. Defendants MILLAN,

SNYDER, and TAMAYO, knew he was unarmed and that he was mentally ill and suffering a mental health crisis, but with deliberate indifference failed to utilize or even recommend the use of CIT skills to slow the situation down and de-escalate the situation. Rather, they sped the interaction up, rushing him down a narrow pathway and performed an unlawful detention. With excessive force, they battered him as he pleaded for an ambulance - all of which led to him being shot and killed by Defendant MILLAN. Pursuant to § 815.2(a), Defendant COUNTY OF IMPERIAL is vicariously liable to Plaintiff for injuries and damages suffered as alleged herein, and incurred as a proximate result of the wrongful conduct of Defendants as detailed in this Complaint.

116. As alleged above, Defendants MILLAN, SNYDER, and TAMAYO violated § 1983 by showing deliberate indifference to the fact that ALBERTO GOMEZ was suffering a mental health crisis. Their conduct was an actual and proximate cause of ALBERTO GOMEZ's pain, suffering, and death, and which were the direct and foreseeable results of these Defendants' conduct.

117. Defendants LOERA, MIRAMONTES, and SHEPPEARD failed to provide proper training and supervision to DEFENDANTS MILLAN, SNYDER, and TAMAYO regarding using techniques of de-escalation instead of escalation when responding to a person suffering a mental health crisis. It is alleged upon information and belief that these Defendants knew their training was insufficient in this regard but acted with deliberate indifference by allowing Defendants MILLAN, SNYDER, TAMAYO, and DOES 1-14 to respond to individuals in mental health crisis. Their collective failure to train the aforementioned Defendants was a substantial factor in ALBERTO GOMEZ's death.

118. It is alleged upon information and belief that Defendants LOERA, MIRAMONTES, and SHEPPEARD knew Defendant MILLAN suffered anxiety and had symptoms associated with panic attacks, including heart palpitations and ringing ears, but with deliberate indifference, allowed Defendant MILLAN to respond to high-stress situations instead of reassigning him to a lower-stress division. Their failure to re-assign

1   Defendant MILLAN to a lower-stress division was a substantial factor in ALBERTO

2   GOMEZ's death.

3       119.   Defendant MILLAN failed to request a transfer to a lower-stress division

4   within the ICSO even though he knew he suffered from anxiety and that he had symptoms

5   commonly associated with having panic attacks.   His failure to request reassignment to

6   another unit was a substantial factor in ALBERTO GOMEZ's death.

7       120.   It is alleged upon information and belief that Defendants SHEPPEARD and

8   PLANCARTE were responsible for working together to create a program to train their

9   respective employees how to properly respond to individuals suffering a mental health

10   crisis.   Additionally, they were tasked with the responsibility by the COUNTY OF

11   IMPERIAL to further develop and implement a joint response between the ICSO and the

12   ICBHS for individuals in the community suffering a mental health crisis.   Defendants

13   SHEPPEARD, PLANCARTE, DOES 15-29 (supervising deputies with ICSO), and DOES

14   45-50 (supervising employees with ICBHS) failed to implement these programs and failed

15   to properly train their respective employees how to respond to individuals suffering a mental

16   health crisis.   The failures by these Defendants were a substantial factor in ALBERTO

17   GOMEZ's death.

18       121.   On information and belief, DOES 1-14, and DOES 50-60 were responsible for

19   responding to ALBERTO GOMEZ's home on December 4-5, 2022.   It is alleged that those

20   DOES who were involved in the response to his home on December 4, 2022, acted with

21   deliberate indifference to the fact that he was suffering a mental illness and failed to place

22   a '5150 hold on him.   This failure was a substantial factor in ALBERTO GOMEZ's death.

23   It is alleged that those DOES responsible for the response to ALBERTO GOMEZ's house

24   on December 5, 2022, acted with deliberate indifference to the fact that he was suffering a

25   mental health crisis and failed to ensure that techniques of de-escalation were employed to

26   ensure his safety. The failures by these Defendants were a substantial factor in Alberto

27   Gomez's death.

28

122.    On information and belief, DOES 30-44, are employees with IBHS who turned ALBERTO GOMEZ away on the morning of December 5, 2022, the day of the shooting, when he and JUAN GOMEZ arrived at their office, during normal business hours, asking for assistance for ALBERTO GOMEZ because he was suffering a mental health crisis.  It is alleged that DOES 30-44 acted with deliberate indifference to ALBERTO GOMEZ's mental health crisis when they told him to go home and that this failure by these defendants was a substantial factor in ALBERTO GOMEZ's death.

123.    Defendant COUNTY OF IMPERIAL is liable for the conduct of the individual defendants named in this claim. §§ 815.2, 845.6.

124.    Plaintiff seeks economic and non-economic damages in an amount to be proven, including compensatory damages which include, but are not limited to, any coroner's fees and funeral expenses, emotional distress, los of love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

## NINTH CAUSE OF ACTION

### Negligence

### (By Plaintiff as Successor-in-Interest Against all Defendants )

125.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-124.

126.    Defendants, collectively, had a duty of care to avoid causing unnecessary physical harm and distress to persons suffering a mental health crisis.  As detailed above, Defendants breached that duty.

127.    Defendants MILLAN, SNYDER, and TAMAYO acted without at least negligence when they used tactics of escalation instead of de-escalation to aggressively and forcefully confront, batter, and unlawfully detain ALBERTO GOMEZ, knowing full well he was mentally ill and that he was in the midst of a mental health crisis.  Defendant MILLAN is also negligent for failing to remove himself from high-stress response calls even though he knew he suffered from anxiety and experienced symptoms commonly associated with having panic attacks, including ringing ears and heart palpitations.  These

Defendants' negligence was the proximate cause of ALBERTO GOMEZ's pain, suffering, and ultimate death.

128.   Defendants LOERA, MIRAMONTES, and SHEPPEARD failed to provide proper training and supervision to DEFENDANTS MILLAN, SNYDER, TAMAYO, and DOES 1-14 regarding using techniques of de-escalation instead of escalation when responding to a person suffering a mental health crisis.  It is alleged upon information and belief that these Defendants acted with at least negligence when they failed to provide the proper training for MILLAN, SNYDER, TAMAYO, and DOES 1-14 to respond to individuals in mental health crisis.  Their collective negligence in failing  to train the aforementioned Defendants was the proximate cause of ALBERTO GOMEZ's pain, suffering and ultimate death.

129.  It is alleged upon information and belief that Defendants LOERA, MIRAMONTES, and SHEPPEARD knew or should have known that Defendant MILLAN suffered anxiety and had  symptoms associated with panic attacks, including heart palpitations and ringing ears, but acting with negligence, allowed Defendant MILLAN to respond to high-stress situations instead of reassigning him to a lower-stress division. Their failure to re-assign Defendant MILLAN to a lower-stress division was a proximate cause of ALBERTO GOMEZ's pain, suffering and ultimate death.

130.   It is alleged upon information and belief that Defendants SHEPPEARD and PLANCARTE were responsible for working together to create a program to train their respective employees how to properly respond to individuals suffering a mental health crisis.  Additionally, they were tasked with the responsibility by the COUNTY OF IMPERIAL to further develop and implement a joint response between the ICSO and the ICBHS for individuals in the community suffering a mental health crisis.  Defendants SHEPPEARD, PLANCARTE, DOES 15-29 (supervising deputies with ICSO), and DOES 45-50 (supervising employees with ICBHS) acted with at least negligence when they failed to implement these programs and failed to properly train their respective employees how

1  to respond to individuals suffering a mental health crisis.  The failures by these Defendants

2  were a proximate cause of ALBERTO GOMEZ's pain, suffering and ultimate death.

3      131.    On information and belief, DOES 1-14, and DOES 50-60, were responsible for

4  responding to ALBERTO GOMEZ's home on December 4-5, 2022.  It is alleged that those

5  DOES who were involved in the response to his home on December 4, 2022, acted with at

6  least negligence when they failed to place a '5150 hold on him at the family's request.  This

7  failure was a proximate cause of ALBERTO GOMEZ's pain, suffering and ultimate death.

8      132.    It is alleged that those DOES responsible for the response to ALBERTO

9  GOMEZ's house on December 5, 2022, acted with at least negligence when the failed to

10  take into account the fact that he was suffering a mental health crisis and failed to ensure

11  that techniques of de-escalation were used to ensure his safety.  The failures by these

12  Defendants were a proximate cause of ALBERTO GOMEZ's pain, suffering and ultimate

13  death.

14      133.    On information and belief, DOES 30-44, are employees with IBHS who turned

15  ALBERTO GOMEZ away on the morning of December 5, 2022, the day of the shooting,

16  when he and JUAN GOMEZ arrived at their office, during normal business hours, asking

17  for assistance for ALBERTO GOMEZ because he was suffering a mental health crisis.  It

18  is alleged that DOES 30-44 acted with at least negligence to ALBERTO GOMEZ's mental

19  health crisis when they told him to go home and that this failure was a proximate cause of

20  ALBERTO GOMEZ's pain, suffering and ultimate death.

21                    **TENTH CAUSE OF ACTION**

22              **Violation of California Civil Code § 52.1 (Bane Act)**

23  **(Plaintiff as Successor-in-Interest  against Defendants MILLAN, SNYDER. and**

24                            **TAMAYO)**

25      134.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-133.

26      135.    The conduct of Defendants' MILLAN, SNYDER, and TAMAYO, as described

27  herein, and acting in the course and scope of their employment for Defendant COUNTY OF

28

1  IMPERIAL, violated Cal. Civ. Code § 52.1 in that Defendants MILLAN, SNYDER, and

2  TAMAYO interfered with ALBERTO GOMEZ's exercise and enjoyment of his civil rights,

3  through the use of wrongful and excessive use of force, detention, intimidation, threats, and

4  by their failure to provide him with medical and mental health services while he was

5  suffering a mental health crisis.

6      136.   As a direct and proximate result of Defendants' violation of § 52.1, ALBERTO

7  GOMEZ suffered violations of his constitutional and statutory rights, and suffered damages

8  as set forth herein.

9      137.   Because this conduct occurred in the course and scope of Defendants'

10 employment, Defendant COUNTY OF IMPERIAL is liable to Plaintiff under the theory

11 *respondeat superior* pursuant to Cal. § 815.2.

12     138.   Plaintiff is also entitled to an award of his reasonable attorneys' fees pursuant

13 to § 52.1(h).

14

15              **REQUEST FOR TRIAL BY JURY**

16 Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands

17 a trial by jury.

18              **PRAYER FOR RELIEF**

19 PLAINTIFF prays for judgment against Defendants as follows:

20     a.   General and compensatory damages in an amount according to proof;

21     b.   Punitive and exemplary damages against all individual defendants;

22     c.   Civil penalties as provided by law;

23     d.   Attorney fees pursuant to Cal. Civil Code § 52.1(b) and Cal. Civil Code § 52.

24     e.   Costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988;

25     f.   All other damages, penalties, costs, and fees as allowed by Cal. Civ. Proc. §§

26          377.20, 377.60 and 1021.5.

27     g.   Costs; and

28

COMPLAINT
34

h.      All other and further relief as the Court may deem proper.

DATE: December 29, 2023                    MARC X. CARLOS, A.P.C


                                           /s/ Marc X. Carlos
                                           MARC X. CARLOS
                                           Attorney for Plaintiff


                                           LAW OFFICE OF CHARLES L. REES


                                           /s/ Charles L. Rees
                                           CHARLES L. REES
                                           Attorney for Plaintiff